J-A18041-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JAMAR COOK | : | |
| | : | |
| Appellant | : | No. 2894 EDA 2023 |

Appeal from the Judgment of Sentence Entered September 12, 2023
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0005765-2019

BEFORE: OLSON, J., DUBOW, J., and BECK, J.

MEMORANDUM BY DUBOW, J.: **FILED JUNE 30, 2025**

Appellant Jamar Cook appeals from the Judgment of Sentence entered in the Delaware County Court of Common Pleas following his entry of a negotiated guilty plea to one count of Theft by Deception-Failure to Correct.[1] He challenges the trial court's denial of his post-sentence motion seeking to withdraw his plea. After careful review, we affirm.

Appellant stipulated to the following facts as stated in the affidavit of probable cause. Appellant was a substitute teacher at the Upper Darby Middle School during the 2018-19 school year. The Upper Darby School District subcontracts with two entities to obtain substitute teachers: Delta-T Group, Inc., and Substitute Teacher Services, Inc. ("STS"). Between September 5, 2018, and April 12, 2019, Appellant submitted time sheets to Delta-T Group;

_____

[1] 18 Pa.C.S. § 3922(a)(3).

in turn, Delta-T Group billed the Upper Darby School District; the school district paid it a total of $28,470.40 for Appellant's services; and Appellant received his pay from Delta-T Group. On April 22, 2019, the school district learned that Appellant had signed and submitted time sheets for the same hours to STS during the same school year, and that the school district had also paid STS $28,470.40, which provided the funds to Appellant.

Upon investigation with both Delta-T Group and STS, the school district learned that the time sheets had been doctored. When confronted with the fraudulent documents, Appellant explained to the principal of the middle school that he had reported his hours for substitute teaching only to Delta-T Group and that he had informed STS at the beginning of the 2018-19 school year that he was not taking any work through them. After a police investigation, the Commonwealth charged Appellant with six counts of theft and forgery.

On September 12, 2023, following a thorough colloquy, the court entered Appellant's guilty plea to one count of Theft by Deception-Failure to Correct. In exchange, the court dismissed the remaining counts and sentenced Appellant in accordance with the negotiated plea agreement to a term of two years' probation and payment of $29,866.20 in restitution to the Upper Darby School District.

On September 18, 2023, Appellant filed a post-sentence motion seeking to withdraw his negotiated guilty plea, asserting that he entered it unknowingly, unwillingly, and involuntarily. Appellant's counsel also filed a

motion to withdraw his representation. On October 4, 2023, the court held a hearing at which Appellant stated that he was "afraid that if I didn't say what the court wanted to hear, that I would be incarcerated on the spot." Tr. Ct. Op., Sept. 27, 2024, at 4 (*quoting* N.T. Motion, 10/6/23, at 8). The court denied his post-sentence motion and indicated it would grant counsel's motion to withdraw following the filing of a notice of appeal.

Appellant filed a timely notice of appeal and obtained new counsel. He raises the following issue for our review:

> Whether the trial court erred in denying Appellant's post- sentence motion to withdraw his guilty plea without an evidentiary hearing where Appellant's counsel provided incorrect advice on Appellant's ability to withdraw a plea during the plea colloquy and asserted allegations in the motion which, if true, would have justified withdrawing the plea, because the decision not to hold a hearing unfairly deprived Appellant of any opportunity to meet his burden.

Appellant's Br. at 4.

We review the denial of a post-sentence motion to withdraw a guilty plea for an abuse of discretion. ***Commonwealth v. Hart***, 174 A.3d 660, 664 (Pa. Super. 2017). "Although no absolute right to withdraw a guilty plea exists in Pennsylvania, the standard applied differs depending on whether the defendant seeks to withdraw the plea before or after sentencing. When a defendant seeks to withdraw a plea after sentencing, he 'must demonstrate prejudice on the order of manifest injustice.'" ***Id.*** at 664 (citation omitted).

> To be valid under the manifest injustice standard, a guilty plea must be knowingly, voluntarily and intelligently entered. **A manifest injustice occurs when a plea is not tendered knowingly, intelligently, voluntarily, and understandingly.**

- 3 -

The Pennsylvania Rules of Criminal Procedure mandate [that] pleas be taken in open court and require the court to conduct an on-the-record colloquy to ascertain whether a defendant is aware of his rights and the consequences of his plea. Under Rule 590, the court should confirm, *inter alia,* that a defendant understands: (1) the nature of the charges to which he is pleading guilty; (2) the factual basis for the plea; (3) he is giving up his right to trial by jury; (4) and the presumption of innocence; (5) he is aware of the permissible ranges of sentences and fines possible; and (6) the court is not bound by the terms of the agreement unless the court accepts the plea.

The reviewing court will evaluate the adequacy of the plea colloquy and the voluntariness of the resulting plea by examining the totality of the circumstances surrounding the entry of that plea. Pennsylvania law presumes a defendant who entered a guilty plea was aware of what he was doing, and the defendant bears the burden of proving otherwise.

*Commonwealth v. Kpou*, 153 A.3d 1020, 1023–24 (Pa. Super. 2016) (internal citations, quotation marks, and brackets omitted; paragraph breaks added).

"A person who elects to plead guilty is bound by the statements he makes in open court while under oath and may not later assert grounds for withdrawing the plea which contradict the statements he made at his plea colloquy." *Commonwealth v. Pollard*, 832 A.2d 517, 523 (Pa. Super. 2003) (citations omitted). Thus, he may not "challenge his guilty plea by asserting that he lied while under oath, even if he avers that counsel induced the lies." *Id*.

Here, Appellant asserts that his negotiated plea "was not actually knowing, intelligent, and voluntary because counsel's plea colloquy suggested that if Appellant wished to withdraw the plea, any issues 'will be addressed' by the trial court and he would be able to 'revisit those issues.'" Appellant's Br. at 7 (citing R.R. 28-29 (N.T. Plea, 9/12/23, at 13-14)). Although the court held a hearing on Appellant's post-sentence motion, Appellant argues that the court erred in denying his plea withdrawal motion "without a[n evidentiary] hearing" because "trial counsel simultaneously moved to withdraw from the representation and asserted a conflict of interest, meaning that Appellant had no one advocating on his behalf" before the court dismissed the post-sentence motion. *Id*. He argues that "the trial court should have held a hearing on the motion to determine whether a manifest injustice would occur should the court deny the motion." *Id*. He analogizes this alleged lack of a hearing to the denial of a PCRA petition without an evidentiary hearing, and notes that "he will not be able to litigate a challenge to his plea via the PCRA" because his probationary term will soon end (*i.e.*, October 2025). *Id*. at 12. Appellant's arguments are meritless.

The trial court addressed Appellant's challenge and concluded that "[t]here is nothing in the record, nor off the record, that occurred that would indicate anything other than that the plea was knowing, intelligent and voluntary." Tr. Ct. Op. at 2. The court explained:

> [Appellant] was represented by a competent and experienced attorney during the negotiated guilty plea, was advised of his

rights, and the rights he was foregoing. Defense counsel in this matter conducted an extremely thorough and detailed colloquy of [Appellant]. The record shows [Appellant's] understanding of the plea. . . .

Prior to the colloquy, [Appellant] read in detail, initialed[,] and signed the Guilty Plea Statement. [Appellant], a college educated individual, was fully aware of the criminal justice system, and fully aware of the elements of the crime for which he was pleading guilty. [Appellant] confirmed he had fully discussed this case at length with counsel on numerous occasions. [Appellant] was meticulously and methodically questioned as to his comprehension and understanding of the process, his rights to a jury trial, the nuances of jury selection, potential exposure if found guilty during trial,[2] as well as the [c]ourt's authority to reject a negotiated guilty plea. [Appellant] also confirmed that he was requesting that this [c]ourt accept his guilty plea. There was no evidence or indication that [Appellant] was not entering into his guilty plea knowingly, intelligently[,] and voluntarily. Based on [Appellant's] request, this [c]ourt accepted [Appellant's] negotiated guilty plea and issued his sentence.

Tr. Ct. Op. at 4.

Further, the court noted that, at the hearing on the post-sentence motion held on October 6, 2023, it rejected Appellant's statement that he answered the questions during the guilty plea hearing as he did because he was afraid if he did not say "what I felt that the [c]ourt wanted to hear . . . I was just going to be incarcerated." *Id*. The court observed that "[Appellant's] statements . . . are not supported by the record, and quite frankly, defy logic. There were no events that took place prior to the plea that would reasonably have led [Appellant] to believe he 'would be incarcerated on the spot'." *Id*.

---

[2] Appellant acknowledged that if he were to go to trial and were found guilty of just one count of theft, a felony of the third degree, the court "could potentially" sentence him up to 3½ to 7 years in prison and a $15,000 fine. N.T. Plea, at 12.

- 6 -

The court also noted that Appellant never said anything during the plea colloquy about feeling pressured by the threat of "immediate incarceration" and it could only decide his post-sentence motion based on the record before it. N.T. Motion at 9.

Our review of the record, including the notes of testimony from the plea hearing and the hearing on the post-sentence motion, confirms that Appellant knowingly, intelligently, and voluntarily entered his negotiated guilty plea, and the court properly exercised its discretion in denying his post-sentence motion to withdraw the guilty plea. *See* N.T. Plea at 4-17; N.T. Motion at 3-4, 5-6, 8-9. We reject Appellant's challenge based upon counsel's explanation of Appellant's post-sentence rights that "if you decide to change your mind here and if Judge Scanlon says [']no['] after he has accepted your plea you can revisit those issues, and those issues will be addressed." Counsel's statement was an accurate statement of the law, and Appellant indicated clearly and without hesitation that he understood his post-sentence rights. N.T. Plea at 14. Appellant does not indicate that, but for counsel's statement, he would not have pled guilty. Moreover, Appellant has made no effort to explain how he suffered prejudice as a result of counsel's correct statement. Thus, contrary to Appellant's suggestion, counsel's statement does not provide a

basis to conclude Appellant entered his negotiated plea unknowingly, involuntarily, or unintelligently.[3]

Finally, the fact that Appellant's plea attorney filed a motion to withdraw his representation fails to convince us that Appellant was deprived of the assistance of counsel at his post-sentence motion hearing. In fact, counsel represented Appellant at that October 6, 2023 post-sentence hearing and indicated that he filed the motion to withdraw his representation to preserve Appellant's rights in a timely fashion based on Appellant's post-sentence expression of his dissatisfaction with plea counsel's representation provided prior to the entry of the negotiated plea. N.T. Motion at 4-5. In response, the court reiterated the extensive colloquy Appellant provided at the plea hearing, observing that "[s]ixty-five times on the record [plea counsel] explained the guilty plea to [Appellant], along with the four-page guilty plea statement, and also the colloquy of this [c]ourt, again going over whether [Appellant] understood what he was doing and also wished this [c]ourt to accept the plea." *Id*. at 4. The court also noted that it would allow counsel to withdraw only after he filed a notice of appeal on Appellant's behalf. *Id*. at 7.

_____

[3] Moreover, to the extent Appellant's argument implies that it is his unhappiness with counsel that rendered his plea involuntary, unknowing, and unintelligent, Appellant clearly stated during the plea hearing that he was satisfied with counsel's representation. **See** N.T. Plea at 6. **Pollard**, 832 A.2d at 523 (observing that a defendant is bound by the statements he makes under oath at his plea hearing).

Appellant has failed to explain how the entry of his plea was the result of a manifest injustice.[4]  Following our review, we conclude that the court properly exercised its discretion in denying Appellant's post-sentence motion to withdraw his guilty plea.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/30/2025

_____

[4] Contrary to Appellant's contention that the manifest injustice standard applies to the denial of the post-sentence motion, the manifest injustice standard applies to the voluntariness of the plea and the thoroughness of the plea colloquy.  *Kpou*, 153 A.3d at 1023.  As the trial court noted, the court may make this determination from the record and, thus, an evidentiary hearing on the post-sentence motion is not required.